Milton **AVERETT**

v.

**DIAMOND OFFSHORE DRILLING SERVICES, INC., et al**

No. 95–1448.

United States District Court, E.D. Louisiana.

Sept. 16, 1997.

Lawrence D. Wiedemann, Brian G. Shearman, Wiedemann & Wiedemann, New Orleans, LA, Craig Wren Brewer, Staines, Eppling & Myers, Metairie, LA, for Plaintiff.

Nelson W. Wagar, III, Chopin, Wager, Cole, Richard, Reboul & Kutcher, LLP, Metairie, LA, James R. Carter, Porteous, Hainkel, Johnson & Sarpy, New Orleans, LA, Esmond Phelps, II, James Richard Swanson, Correro, Fishman, Haygood, Phelps, Weiss & Walmsley, LLP, New Orleans, LA, for Defendants.

FALLON, District Judge.

This case has been tried before the Court without a jury. Counsel have both put on ample evidence and have given me the benefit of their thinking in well-drafted briefs and I take this opportunity to give my findings of fact and conclusion of law, which I will deliver orally.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.

### PROCEDURAL HISTORY

Milton Averett was employed by Diamond Offshore Drilling Services to work as a member of the crew of it's offshore vessel the OCEAN COLUMBIA. On February 26, 1994, he was assigned to assist in the offloading of a large tank from a supply vessel, the M/V BO–TRUC 37. The operation required him to climb on to a tank and hook the leads of the crane to padeyes which were located on the tank. While performing this operation, he was caused to slip and fall some eleven feet to the deck of the vessel, the M/V BO–TRUC 37.

The tank was manufactured by OSCA, Inc. and the M/V BO–TRUC 37 was owned by L & M Bo–Truc Rental, Inc.

Averett filed suit under the Jones Act as well as the General Maritime Law against Diamond Offshore Drilling Services, Inc., L & M Bo–Truc Rental, Inc., OSCA, Inc., and Chevron USA Production Company, seeking to recover compensatory damages resulting from his injuries, as well as maintenance and cure. In addition, Averett seeks attorneys' fees for failure to pay maintenance and cure.

Prior to the commencement of the trial, the defendants jointly and severally stipulated that they were liable for the compensatory damages, if any, resulting from the incident. In addition, they conceded that Averett was not comparatively negligent. They do, however, contest that Averett is entitled to recover maintenance, and they contest that he is entitled to recover any attorneys' fees.

The cause came on for a non-jury trial which began and ended on September 15, 1997. The Court, having carefully considered the testimony of all witnesses, the exhibits entered in the trial, the record and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, hereby orally enters it's findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such. And to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

### II.

### FINDINGS OF FACT

(1)

As a direct result of this fall from the top of the storage tank located on the BO–TRUC

37, Averett sustained a ruptured intervertebral disc at the L–3, L–4 level of his spine.

(2)

His injury caused severe pain and discomfort and prevented him from performing his duties aboard the OCEAN COLUMBIA. Diamond Offshore sent him to a doctor in Houma by the name of Dr. Chris Cenac, an orthopaedic surgeon, who conducted an examination and eventually admitted him to Terreborne Hospital for diagnostic tests. After the first examination, Dr. Cenac returned the plaintiff to work. The plaintiff's pain persisted. The plaintiff returned to the doctor within a short time and it was at that time that he was sent for additional tests. The tests were negative, or at least, nonconclusive. But Averett still complained of pain and still had demonstrably restricted movement. Dr. Cenac suggested that he return home and see his private physician.

(3)

Averett returned to his home in Hattiesburg, Mississippi and soon thereafter saw Dr. Kenneth Adatto. After a period of conservative treatment, which did not relieve his pain, he underwent an anterior diskectomy and fusion of the L–3, L–4 level. This surgical procedure took place at St. Charles General Hospital where Averett was an inpatient from 11–23–94 to, and including, 11–28–94.

(4)

Upon discharge he was still in pain, though he was somewhat improved. He was placed on a regular diet, given pain medication and fitted with a back brace, which he had to wear full time for at least six months. He was instructed not to drive, stoop, bend or lift anything for a month or so.

(5)

With convalescence and care, Averett continued to improve. By April of 1995, his comfort level was reported as "good." X-rays revealed the bone graft in his back was in good position. In May, approximately six months post-op, the x-rays showed a good solid artgridesus. He had a mild loss of motion and mild spasm, as recorded by Dr. Adatto. In January of 1996, Dr. Adatto reported that Averett was barely taking any pain medication. He was "more comfortable," according to his doctor, Dr. Adatto.

(6)

In May of 1996, his treating physician, Dr. Adatto, indicated Averett is "doing quite well." "He is getting close to maximum recovery." Dr. Adatto testified, by way of his report, that Averett has a "ten to fifteen percent disability of the lumbar spine." "Functionally, he needs to avoid repetitive stooping or bending and repetitive lifting of objects over twenty-five to fifty pounds, as well as prolonged sitting or standing in the same position for forty five minutes, plus or minus fifteen minutes, without being able to move around and change position."

In August of 1997, his treating physician declared that Averett had "pretty much reached maximum recovery." However, the evidence is clear that he, Averett, was able to participate in rehabilitation or a work hardening program, as well as seek some gainful activity, on a restricted basis, at least six months before the date in August.

By January, or at least by February of 1997, the medical evidence indicates that Averett had stabilized and reached maximum medical recovery, both from a medical and legal standpoint. See SCHOENBAUM, Volume I, Section 6–33, second edition, 1994.

(7)

In addition to his orthopaedic problems, Averett complains of depression and some sexual dysfunction, which has a psychological etiology. He has in the past and still is presently receiving some medication and psychiatric consultation for these problems. Though troublesome, painful, and embarrassing, the evidence indicates these problems will not hamper his return to some gainful activity. In fact, both he, his wife, and his doctor believe that these conditions will be helped and alleviated when he is able to return to some type of work and "get his life back in order."

(8)

The good news, if there is any good news in this unfortunate situation, is that Averett has a good education. He is a young man, and has some formal training in the installation and repair of electronic equipment such

as TVs and audio equipment. To his credit, he completed high school in 1986 and attended Hines Community College for three years where he received a degree in electronics.

Following graduation, he served his country in the United States Marine Corps, where he functioned in the communications section. In short, Averett has the education and experience and the willingness which will allow him to compete for jobs which do not stress strength or agility. Of course, due to his injury and the resultant restrictions and limitations, Averett, unfortunately, will never be able to return to the heavy manual work he chose and which he was performing at the time of his injury.

## III.

## CONCLUSIONS OF LAW

### (1)

This Court has jurisdiction over these matters pursuant to 28 USC, Section 1333, which provides original jurisdiction over admiralty and maritime claims. Also, the Court has jurisdiction over this matter by virtue of the Jones Act, 46 USC 688. As well as Rule 9(h) of the Federal Rules of Civil Procedure.

### (2)

As previously mentioned, Milton Averett sustained injuries when he fell or was knocked off the top of a storage tank while he was hooking it to a crane in preparation of moving it from one vessel to another vessel. The defendants have conceded liability, thus the issue before this court is what, if any, damages were sustained as a result of this incident.

### (3)

Milton Averett was born on March the 17th of 1968. At the time of his injury, February 26 of 1994, he was 26 years old. He is married, and has one minor child. At the time of his injury, Averett had a worklife expectancy of thirty years and a life expectancy of forty-one years. His gross before-tax wages at the time of his injury were nineteen thousand eight hundred and ninety-seven dollars and seventy-one cents and his fringe benefits, including room and board, were approximately four thousand five hundred dollars a year. His net after-tax earnings and fringe benefits were approximately twenty thousand dollars per year, which will be used as a benchmark for computing Averett's loss of wage earning capacity. See *Norfolk and Western Railway Company v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980); *Jones and Laughlin Steel Corporation v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983); and *Culver v. Slater Boat Company*, 722 F.2d 114 (5th Cir.1983).

### (4)

The credible evidence supports the conclusion that as a direct result of his injury of February 26, 1994, Averett was temporarily totally disabled from earning any sums of money from February 26, 1994 until February 26, 1997, for a loss of sixty thousand dollars. From February 27, 1997 to February 27, of the year 2000, the evidence supports the conclusion that he could return, will be able to return, to some minimum wage job from which he would earn minimum wages, which would result in an annual loss of eight thousand five hundred dollars per year. Reducing this figure by the appropriate below market discount rate would result in his sustaining a loss of twenty-four thousand forty-three dollars and ten cents.

From February 27, 2000 to February 27, 2007, the evidence supports the conclusion that Averett would, through his efforts, through his increased skill, and through his efficiency and overall physical and mental improvement, be able to perform work which would reduce his loss during this period to an average of approximately five thousand dollars per year. Reducing this sum by the appropriate below market discount rate would result in an economic loss of thirty-one thousand dollars.

Thus the Court finds as a matter of fact and law that Milton Averett has sustained and will sustain in the future a loss of wage earning capacity including fringe benefits in the total sum of a one hundred fifteen thousand forty-three dollars and ten cents.

### (5)

In addition to the loss of wage earning capacity, Averett incurred medical expenses

which the Court finds were made necessary by his injuries. He is entitled to recover the amount of these losses, totalling fifty-five thousand nine hundred and ninety-nine dollars and thirty-one cents.

### (6)

Milton Averett also has sustained, and will for sometime in the future, sustain physical and mental pain and suffering. From the evidence presented, the Court concludes that an appropriate amount for this element of damage is one hundred and seventy-five thousand dollars, ninety-five thousand dollars of which is attributable to the time prior to the trial and eighty thousand is allotted for the future.

### (7)

Milton Averett has received maintenance payments at the rate of two hundred and eighty dollars every two weeks until September the 9th, 1994 when his employer, Diamond, terminated these payments based on the report from Dr. Chris Cenac, dated September 7, 1994, in which Dr. Cenac advised that in his opinion Averett "had no residual from the 2–26–94 accident" and "he can return to his prior occupation without limitations."

Averett seeks medical payments subsequent to September 1994, as well as attorneys' fees for Diamond's failure to pay the same.

■ Because of the Court's finding that Averett was indeed disabled until February 27, 1997, he would be entitled to maintenance payments until that time, but he has already received wages plus fringe benefits which included the food and lodging as part of his general damage award under the Jones Act and General Maritime Law. Thus, he is not entitled to recover this item under his maintenance and cure remedy. Recovery of this item of damage under the vessel owner's maintenance and cure obligation would be double recovery and thus is not allowed. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372 (5th Cir.1989). And *Pelotto v. L & N. Towing Company*, 604 F.2d 396 (5th Cir. 1979).

■ Moreover, claimant may not recover attorneys fees for a party's failure to pay maintenance unless such failure is willful, wanton and egregious, *Guevara v. Maritime Overseas Corporation*, 59 F.3d 1496 (5th Cir. 1995).

■ In the present case, the employer Diamond, based it's decision on a doctor's report. Thus, the Court finds it's action in terminating maintenance, though erroneous, was not willful, wanton or egregious; and accordingly, Diamond is not responsible for attorneys fees.

### (8)

This is an Admiralty case tried without a jury pursuant to the Court's admiralty jurisdiction invoked by Federal Rules of Civil Procedure, Rule 9(h). Accordingly, an award of prejudgment interest on past damages is proper. The starting date and rate is left to the sound discretion of the Court. See *Doucet v. Wheless Drilling Company*, 467 F.2d 336 (5th Cir. 1972) and *Marathon Pipe Line Company v. M/V Sea Level II*, 806 F.2d 585 (5th Cir.1986).

The Court finds that an award of prejudgment interest from the date of judicial demand is appropriate in this case at the rate of 5.60 percent per annum on plaintiff's past damages, as described above. *Martin v. Walk, Haydel & Associates*, 794 F.2d 209, 212 (5th Cir.1986).

### IV.

### SUMMARY

On the basis of the foregoing findings of fact and conclusions of law, the Court finds that the plaintiff, Milton Averett, has sustained damages due to the defendants' negligence and the unseaworthiness of the involved vessel. Accordingly, the plaintiff is entitled to recover from the defendants the following damages:

(1) Sixty thousand dollars ($60,000.00) for loss past earnings;

(2) Fifty-five thousand and forty-three dollars and ten cents ($55,043.10) for future earnings lost, (i.e. $24,043.10 + $31,000);

(3) Fifty-five thousand nine hundred and ninety nine dollars and thirty-one cents ($55,999.31) for medical expenses;

(4) One hundred and seventy-five thousand (175,000.00) for past, present, and future pain and suffering.

Additionally, plaintiff is entitled to prejudgment interest on the above past losses. Totalling two hundred ten thousand nine hundred ninety-nine dollars and thirty-one cents, (210,999.31) at the rate of 5.60 percent per annum from the date of judicial demand until satisfied.

Further, the plaintiff is entitled to post judgment interest at the legal rate of the above future losses, totalling one hundred thirty-five thousand forty-three dollars and ten cents ($135,043.10) from the date of judgment until satisfied.

That is the judgment of the Court. Thank you, gentlemen.

Get together and see if you can prepare a judgment within ten days after receiving a transcript of these findings. If you can't agree on a judgment, give me two separate judgments and I will draft the judgment.

Thank you, very much for the professional manner in which both of you have handled this case.

The Court stands in recess.