## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 12, 2013

No. 12-30041

Lyle W. Cayce
Clerk

WALLACE BOUDREAUX,

Plaintiff - Appellant

v.

TRANSOCEAN DEEPWATER, INC.

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Our prior opinion is vacated and withdrawn, and this opinion is substituted in its place.[1]  This case presents the question of whether a Jones Act employer who successfully establishes a defense to liability for further maintenance and cure under *McCorpen v. Central Gulf Steamship Corp.*[2] is

---

[1] No member of this panel nor judge in regular active service on the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P. and 5th CIR. R. 35) the Petition for Rehearing En Banc is DENIED.

[2] 396 F.2d 547 (5th Cir. 1968).

No. 12-30041

thereby automatically entitled to restitution for benefits already paid. The district court answered in the affirmative, creating a right of action never before recognized in maritime law. We reverse and render.

## I.

Wallace Boudreaux began working for Transocean Deepwater, Inc. ("Transocean") in January 2005. He failed to disclose serious back problems in Transocean's pre-employment medical questionnaire, affirmatively answering "no" to several inquiries regarding any history of back trouble. Less than five months after his hire, Boudreaux claimed that he had injured his back while servicing equipment. As a consequence, Transocean paid the seaman maintenance and cure for nearly five years.

In April 2008, Boudreaux filed suit against Transocean, alleging a right to further maintenance and cure, seeking punitive damages for Transocean's alleged mishandling of past benefits, and asserting claims for Jones Act negligence and unseaworthiness. During discovery, Transocean obtained evidence of Boudreaux's pre-employment history of back problems. Transocean filed an unopposed motion for partial summary judgment on Boudreaux's claim for further benefits, invoking *McCorpen* as a defense to maintenance and cure liability. Under *McCorpen*, a vessel owner's obligation to pay maintenance and cure to an injured seaman terminates upon proof that the seaman, in procuring his employment, "intentionally" and "willfully" concealed a material medical condition causally linked to the injury later sustained.[3]

The district court granted Transocean's unopposed motion. Thereafter, Transocean filed a counterclaim to recover the maintenance and cure payments it had already made to Boudreaux. Transocean moved for summary judgment

---

[3] 396 F.2d at 549; *Johnson v. Cenac Towing Inc.*, 544 F.3d 296, 301 (5th Cir. 2008).

on the counterclaim, contending that its successful *McCorpen* defense automatically established its right to restitution under general maritime law. Prior to the district court's ruling on the motion, Transocean and Boudreaux reached a bracketed settlement that resolved Boudreaux's Jones Act negligence and unseaworthiness claims and left for decision only the viability of Transocean's proposed counterclaim for restitution. Under the settlement, Boudreaux was entitled to a lesser sum of money if the court recognized the counterclaim and a greater sum if it did not.

Though Transocean acknowledged that its restitution-via-*McCorpen* theory was novel, it urged the district court to fashion a new maritime right of action based on state law principles of fraud and unjust enrichment. In a thoughtful opinion, the district court agreed and awarded summary judgment to Transocean on its counterclaim, albeit without accepting Transocean's state-law theories. Boudreaux appeals.

## II.

In light of the parties' bracketed settlement, this case turns on the purely legal question of whether a Jones Act employer who has paid maintenance and cure to a seaman injured in its employ is, upon successfully establishing a *McCorpen* defense to further liability, automatically entitled to a judgment against the seaman for benefits already paid. Transocean made a strategic decision not to litigate this case on its facts; rather, it asks this Court to hold that *any* employer who establishes a *McCorpen* defense is automatically entitled to restitution. We decline the invitation.

We begin with an overarching reality: the First Congress, convening in New York, created the federal district courts primarily in service of the maritime law, thereby continuing the British law of the sea. Under that comprehensive

No. 12-30041

body of jurisprudence, whose origins trace back to the middle ages, a seaman injured in his employ enjoys a right to maintenance and cure — a small daily stipend to pay for food, lodging, and basic medical care.[4] The right is intrinsic to the employment relationship and essentially unqualified: it cannot not be contracted away by the seaman,[5] does not depend on the fault of the employer,[6] and is not reduced for the seaman's contributory negligence.[7]

To be sure, it has always been the rule that a seaman can lose the right to maintenance and cure through gross misconduct. Traditionally, this exception was narrowly confined to "injuries or illnesses resulting from extreme drunkenness, brawls or the contraction of venereal disease."[8] In *McCorpen*, this Court clarified that the exception includes instances where a seaman procures his employment by "intentionally" and "fraudulently" concealing a material medical condition causally related to the injury later sustained.[9] The requisite quantum of proof under *McCorpen* is the same as that for fraud claims. But

---

[4] 1 THOMAS SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-28 (5th ed. 2012); *see also Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528 (1938) ("The maintenance exacted is comparable to that to which the seaman is entitled while at sea, and 'cure' is care, including nursing and medical attention during such period as the duty continues.").

[5] *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 279 (5th Cir. 2007) ("[M]aintenance and cure is an intrinsic part of the employment relationship, separate from the actual employment contract. . . . [it] cannot be contracted away.").

[6] *Calmar*, 303 U.S. at 527 ("The duty, which arises from the contract of employment, does not rest upon negligence or culpability on the part of the owner or master.").

[7] *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 379 (1918).

[8] 1B BENEDICT ON ADMIRALTY § 45 (Matthew Bender ed. 2012).

[9] *McCorpen*, 396 F.2d at 549. One of the earliest published cases to develop a *McCorpen*-esque defense to maintenance and cure liability is the Third Circuit's decision in *Lindquist v. Dilkes*. *See* 127 F.2d 21, 22–23 (3d Cir. 1941).

4

*McCorpen* never addressed the issue of restitution for benefits already paid.[10] Indeed, *McCorpen* itself is in tension with *Still v. Norfolk & Western Railway Co.*,[11] in which Justice Black clarified that a worker's fraud in procuring his employment does not vitiate the employment relationship, allowing him to maintain a suit for damages under the Federal Employers' Liability Act.[12] Courts including ours have since recognized that *Still*'s logic and congressionally rooted paternal policy applies with equal force to seamen.[13]  Yet if the seaman's dishonesty does not terminate his status as seaman or his damages remedy, the right to maintenance and cure ought be an *a fortiori* case; after all, it is an essential part of the employment relationship — a down payment on damages that allows the seaman to subsist and pay for basic medical expenses in the

---

[10] *See McCorpen*, 396 F.2d at 549; *see also Patterson v. Allseas USA*, 145 F. App'x 969, 970 (5th Cir. 2005) ("The issue of whether a shipowner may affirmatively recover maintenance and cure payments it makes to a seaman if the shipowner makes these payments before learning of the seaman's conduct was not before the court in *McCorpen* . . . we decline to decide this difficult *res nova* issue on this record.").

[11] 368 U.S. 35 (1961).

[12] *See id.* at 45 ("[T]he status of employees who become such through other kinds of fraud . . . must be recognized for purposes of suits under the Act.  And this conclusion is not affected by the fact that an employee's misrepresentation may have, as is urged here, contributed to the injury or even to the accident upon which his action is based.").

[13] *See, e.g.*, *Johnson*, 544 F.3d at 301–02 ("The Supreme Court's decision in *Still* makes clear that a seaman . . . is not barred from suit under the Jones Act because he conceals a material fact in applying for employment." (citations omitted) (internal quotation marks omitted)); *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 178 (5th Cir. 2005) ("The Supreme Court has effectively foreclosed any argument that misrepresentations in an application for employment might void the necessary employment relation.") (quoting *Reed v. Iowa Marine & Repair Corp.*, 143 F.R.D. 648, 651 (E.D. La. 1992)); *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 989–90 (9th Cir. 1987) ("Maintenance and cure . . . derives from a seaman's employment on a vessel . . . . The remedial nature of the Jones Act and maritime law requires a less technical, contractual definition of 'employee' than Sealand asks us to use.") (citing *Still*, 368 U.S. at 45)).

immediate aftermath of his injury.[14]  Though the viability of the *McCorpen* defense cannot seriously be questioned at this late hour, Transocean's novel attempt to extend the defense into an affirmative right of recovery finds virtually no support, and we are not inclined to accede.[15]

The district court's concern with the egregious facts here is understandable, but the sweeping counterclaim it endorses would mark a significant retreat from our hoary charge to safeguard the well-being of seamen.[16]  Already, even without fraud, an employer may offset any Jones Act damages recovered by the seaman to the extent they duplicate maintenance and cure previously paid.[17]  This, if the employer "show[s] that the damages assessed against it have in fact and in actuality been previously covered."[18]  As a fully developed Jones Act damages model duplicates, "in fact and in actuality," past payments for maintenance and cure, it is not clear that the current regime affords a dishonest seaman anything more than the sums to which he is already

---

[14] *See Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 18 (1963) ("[R]emedies for negligence, unseaworthiness, and maintenance and cure . . . serve the same purpose of indemnifying a seaman for damages caused by injury, depend in large part upon the same evidence, and involve some identical elements of recovery.").

[15] In *Vitcovich v. Ocean Rover O.N.*, an unpublished memorandum decision, the Ninth Circuit sanctioned a restitution-via-*McCorpen* counterclaim; however, the decision is devoid of analysis.  *See* 1997 WL 21205 (9th Cir. 1997).  Courts that have meaningfully engaged with the proposed counterclaim's broader implications for maritime practice have rejected *Vitcovich*.  *See Dolmo v. Galliano Tugs, Inc.*, 2011 WL 6817824, at *2 (E.D. La. 2011), *aff'd* 479 F. App'x 656 (5th Cir. 2012); *Hardison v. Abdon Callais Offshore, LLC*, 2012 WL 2878636, at *7 (E.D. La. 2012); *Am. River Transp. Co. v. Benson*, 2012 WL 5936535, at *5 (N.D. Ill. 2012); *Cotton v. Delta Queen Steamboat Co., Inc.*, 36 So. 3d 262 (La. Ct. App. 2010).

[16] *See Karim v. Finch Shipping Co. Ltd.*, 374 F.3d 302, 310 (5th Cir. 2004) ("[T]he protection of seamen was one of the principal reasons for the development of admiralty as a distinct branch of law." (citation omitted)).

[17] *See Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1171 (5th Cir. 1982).

[18] *Id.* at 1171 (internal quotation marks omitted).

entitled under *Still* — unless the damages recovery is insufficient to absorb the prior payments.[19]  Yet we are urged to strike a new balance and allow an employer who establishes a *McCorpen* defense to automatically recover prior payments, without requiring the employer to prove duplication and regardless of the outcome of the primary suit.  In cases where no damages are recovered, or the award is insufficient to offset the seaman's restitution liability, the employer would gain an affirmative judgment against the seaman.  Although most likely uncollectible, the judgment would stand as a serious impediment to the seaman's economic recovery, and its threat would have a powerful *in terrorem* effect in settlement negotiations.  The high-low settlement confected by the parties in this case evidences this effect, hinging on whether the risk factor of affirmative recovery will be allowed by this Court.

Transocean asks us to weigh again conflicting values — of protecting seamen from the dangers of the sea, and employers from dishonesty.  But the existing regime hardly leaves employers powerless in the face of seaman fraud.  Contrary to Transocean's suggestion, an employer is entitled to investigate a claim for maintenance and cure before tendering any payments to the seaman — without subjecting itself to liability for compensatory or punitive damages.[20]

---

[19] We have recognized that cure payments are inherently duplicative of a Jones Act damages award for past medical expenses. *Brister v. A.W.I., Inc.*, 946 F.2d 350, 361 (5th Cir. 1991).  Maintenance payments also duplicate a lesser-included portion of a Jones Act recovery, as they compensate the seaman for the loss of fringe benefits (food and lodging) he would have enjoyed aboard the vessel had he not been injured. *See, e.g.*, *Williams v. Reading & Bates Drilling Co.*, 750 F.2d 487, 490 (5th Cir. 1985) (holding that a Jones Act damages award for lost compensation includes both wages and fringe benefits); *see also Averett v. Diamond Offshore Drilling Servs., Inc.*, 980 F. Supp. 855, 859 (E.D. La. 1997) ("[The seaman] has already received wages plus fringe benefits which included the food and lodging as part of his general damage award under the Jones Act and General Maritime Law.  Thus, he is not entitled to recover this item under his maintenance and cure remedy.").

[20] *See Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987) ("Upon receiving a claim for maintenance and cure, the shipowner need not immediately commence payments; he is entitled to investigate and require corroboration of the claim. . . . A shipowner who is in

No. 12-30041

If the employer finds any "causal link" between the seaman's present injury and a concealed prexisting disability, it can bring suit under *McCorpen* and terminate its obligation to pay — even if the seaman's on-the-job accident (and the employer's negligence) contributed to the injury. And to the extent that the employer has already paid benefits, it is entitled to recoup them when there are damages to offset. In our view, this scheme achieves a fair reconciliation between protecting seamen in the wake of debilitating on-the-job injury and ensuring that shipowners can protect themselves from liability for sums attributable to concealed preexisting injuries. The scheme has held its own for decades and we are not so bold as to now claim a new view — one that the hundreds before us have either overlooked or rejected.

Today, we merely render explicit what has been implicit for many years: that once a shipowner pays maintenance and cure to the injured seaman, the payments can be recovered only by offset against the seaman's damages award — not by an independent suit seeking affirmative recovery. The case for exercising our extraordinary power to create a new right of action has not been made. There is only the change of advocates and judges, by definition irrelevant to the settling force of past jurisprudence — always prized but a treasure in matters maritime. This against the cold reality that the sea has become no less dangerous, and the seaman no less essential to maritime commerce.

## III.

We REVERSE the district court's order awarding summary judgment to Transocean on its counterclaim and RENDER judgement for Boudreaux.

---

fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the maintenance and cure[,] [not compensatory or punitive damages].").

No. 12-30041

EDITH BROWN CLEMENT, Circuit Judge, concurring in the judgment.

Transocean asks us to recognize a counterclaim for restitution upon a successful establishment of a *McCorpen* defense. While I believe that such a counterclaim is possible under maritime law and general equitable principles, *see Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1089 (5th Cir. 1982) ("A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity." (quoting *The David Pratt*, 7 Fed. Cas. 22, 24 (D. Me. 1839)), the majority has expressed concern about recognizing this counterclaim wholesale with little in terms of caselaw to guide us.[1] Given the lack of precedent on this issue, the majority does not see this case as the ideal vehicle for evaluating the proposed counterclaim because it does not present sufficient information on the practical effect the claim would have on a seaman.

Although I concur in the judgment—if not the discussion of *Still v. Norfolk & Western Railway Co.*—I would recognize (not inconsistently with the majority opinion) that an employer may assert a counterclaim for maintenance and cure as a set-off to Jones Act damages when restitution will not result in an undue adverse impact on the seaman, and when maintenance and cure is not entirely duplicative of Jones Act damages. *Cf. Colburn v. Bunge Towing, Inc.*, 883 F.2d

---

[1] *But see Souviney v. John E. Graham & Sons*, No. 93-0479, 1994 WL 416643, at *5 (S.D. Ala. 1994) (unpublished) ("Because plaintiff intentionally concealed material facts about the very back injury for which he now seeks recovery against the defendant . . . as a matter of law, plaintiff is not entitled to receive maintenance and cure benefits. To the extent that such benefits have been paid by the defendant, the defendant is entitled to recover the amount of those benefits by way of judgment against the plaintiff."); *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 235-37 (D. Haw. 1990) (granting a counterclaim for $30,000 of maintenance and cure after defendants established that the plaintiff was never legally entitled to receive the benefits); *see also Bergeria v. Marine Carriers, Inc.*, 341 F. Supp. 1153, 1154-56 (E.D. Pa. 1972) ("In addition to our finding that [a] counterclaim [for improperly paid maintenance and cure] is cognizable within the maritime jurisdiction, it must also be allowed as a contractual set-off.").

9

No. 12-30041

372, 378 (5th Cir. 1989).[2]  I see nothing in our caselaw at variance with this conclusion, and believe that it is necessary, especially in the wake of *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009), for this court to be able to continue to promote the "combined object of encouraging marine commerce and assuring the well-being of seamen." *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 727 (1943).

---

[2] This is the result Boudreaux and Transocean sought by way of their bracketed settlement agreement.  On the facts of this case, I would find recovery permissible.