# United States Court of Appeals
## For the First Circuit

No. 16-1267

BLOCK ISLAND FISHING, INC.,

Plaintiff, Appellee,

v.

JAMIE ROGERS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Lipez, and Barron,
Circuit Judges.

Jonathan E. Gilzean, with whom David F. Anderson and Latti & Anderson LLP were on brief, for appellant.
Thomas J. Muzyka, with whom Kirby L. Aarsheim and Clinton & Muzyka, P.C. were on brief, for appellee.

December 23, 2016

**LYNCH**, <u>Circuit Judge</u>. This case involves rulings of some significance to seamen and their employers in this circuit, as well as for summary judgment practice. Jamie Rogers, a seaman, was injured on October 3, 2013, on the vessel F/V HEDY BRENNA. Admiralty law entitles seamen who become injured during the course of their service at sea to recover "maintenance and cure" payments from their employers. Block Island Fishing, Inc., is the owner and operator of the fishing vessel. Having made some maintenance and cure payments to Rogers and believing it had overpaid, Block Island brought this suit against Rogers to dispute the duration and amount of maintenance and cure payments that it owed.

Block Island then moved for summary judgment on the ground that its maintenance and cure duties terminated on July 31, 2014. It supported its motion with record evidence showing that Rogers had returned to work as a commercial fisherman on another fishing vessel in July.

The district court rejected July 31 as the proper date of termination. But it went beyond the issue raised by Block Island's summary judgment motion and found November 18, 2014 as the date on which Block Island's obligations ended. That was the date on which a doctor, but not Rogers' primary care physician, found that Rogers no longer needed follow-up care.

The district court also noted that injured seamen are generally entitled to maintenance and cure payments only in the

amount of their actual living expenses, but it reserved for a jury to determine the exact sum that Block Island owed Rogers, along with other issues not resolved at the summary judgment stage. Relatedly, the district court held on summary judgment that Block Island had overpaid Rogers by calculating its maintenance and cure payments using figures that overestimated Rogers' actual living expenses. It further ruled that Block Island could offset the sum of overpayment against any damages award that Rogers might win at trial. We affirm in part and vacate and remand in part.

As to the exact date on which Block Island's maintenance and cure obligations ended, the district court erred by sua sponte replacing Block Island's proposed date (July 31) with its own (November 18) without giving Rogers sufficient notice or opportunity to make his case against the new date. A summary judgment order is premature where the nonmoving party lacked "notice and a reasonable time to respond" to the grounds on which that motion would be granted. Fed. R. Civ. P. 56(f).

We agree with the district court's implicit recognition that injured seamen like Rogers can generally recover only reasonable expenses through maintenance and cure payments, and that it will be the factually exceptional case where the seaman's actual expenses are not reasonable. Whether this case presents such exceptional circumstances is an issue for the jury. Finally, as a matter of first impression, we adopt the ruling of the Fifth

- 3 -

Circuit in Boudreaux v. Transocean Deepwater, Inc., 721 F.3d 723 (5th Cir. 2013), and hold that Block Island may offset any overpayment against Rogers' potential damages award, but may not sue for the sum in an independent action. See id. at 726–28.

I.

"Because our review of a grant of summary judgment is de novo, we, like the district court, are obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Although there are numerous dates at issue, the core of the dispute involves (1) when Block Island's maintenance and cure obligations terminated, and (2) the amount, if any, of the maintenance and cure owed. Block Island takes the position that it overpaid Rogers based on an inflated rent amount that it believed Rogers to be paying when, in fact, Rogers had found less expensive housing. Rogers takes the position that special circumstances dictate that actual expenses are not the appropriate measure here.

A. Rogers' Injury and His Various Residences from 2013 to 2014

In August 2013, Rogers and his family moved into a single-family home in Bristol, Rhode Island. He paid the first month's rent of $1,600, which included utilities, but he cannot remember paying rent in subsequent months. In September 2013, Rogers joined the crew of the F/V HEDY BRENNA, a commercial fishing

vessel owned and operated by Block Island.  For a fishing trip in which he participated that month, Rogers was paid $2,892 in his catch share for the trip.

On October 3, 2013, during another fishing voyage, Rogers fell off the top bunk while sleeping and injured himself. Three days later, upon returning from the voyage, Rogers was diagnosed with a fractured rib and received medical treatment.  In October 2013, Block Island paid Rogers $1,752.37 in catch share from the October 3 voyage and $475 in maintenance.  On November 1, 2013, Block Island supplemented that amount with an additional $175 in maintenance and $1,857.78 in lost wages.  The total sum paid from Block Island to Rogers over this period equaled $4,260.15.

In November 2013, Rogers and his family were evicted from the Bristol apartment and moved to a less expensive apartment in Fall River, Massachusetts. He paid $625 in monthly rent, excluding utilities, for the new Fall River apartment.  On November 4, 2013, Rogers' treating physician, Dr. Christian Campos, gave him a "fit for duty" slip and cleared him to return to work as a fisherman "without restrictions."

Rogers' health worsened in December, however, when he was diagnosed with pneumonia and was hospitalized for three weeks. Rogers attributes the pneumonia to his rib injury.  Block Island

learned about Rogers' condition and hospitalization on December 19, 2013.

On February 20, 2014, Dr. Campos reported that Rogers' condition was improving and that Rogers could "increase his level of physical activity as tolerated without restrictions" while staying on pain medication. On March 17, 2014, Dr. Campos completed another examination and once again advised Rogers to continue to "increase his level of physical activity as tolerated without restrictions."

In March 2014, Rogers moved to Sparta, Tennessee, where he lived with his brother. Rogers paid his brother $800 per month as rent. Finally, in May or June 2014, Rogers purchased a 38-foot boat for $2,500 and lived on that boat before returning to Fall River in June.

On June 19, 2014, Rogers' primary care physician, Dr. Melanie Cardoza, examined Rogers for pain in his lower back and left leg. During this examination, Rogers told the doctor that he had returned from a fishing trip the previous day and that he was planning to embark on another fishing trip the next day. The conversation demonstrated that Rogers had been working as a fisherman in June. Dr. Cardoza's examination of Rogers' chest and lungs revealed "normal excursion with symmetric chest walls and quiet, even and easy respiratory effort with no use of accessory muscles."

By July 2014, Rogers was working on, and was physically fit to captain, another fishing vessel, the KELLY ANN. But Dr. Campos examined Rogers in August 2014 and provided him with a letter stating that he was not yet fit to return to work as a commercial fisherman.

On November 18, 2014, Dr. Campos examined Rogers again and found that "his condition had improved to the point that no 'further formal follow-up' was necessary." At oral argument, Rogers' counsel clarified that although Dr. Campos had discharged Rogers from his care on November 18, he had "transferr[ed] all follow-up care to his primary care physician, Dr. Cardoza, who was also treating Rogers for his illness and injury."

B. Communications Between Parties Regarding Maintenance and Cure

In January 2014, after learning about Rogers' pneumonia and hospitalization the previous month as recounted above, Block Island hired Neil Stoddard of Marine Safety Consultants to investigate Rogers' demand for maintenance and cure. From that point, almost a year of correspondence ensued between Stoddard and Danny Alberto, a paralegal employed by Rogers' counsel, regarding the rate of maintenance and cure owed to Rogers.

In a letter dated January 9, 2014, Stoddard requested medical records from Rogers' counsel to support Rogers' claim of ongoing medical treatment. On January 24, 2014, Alberto responded to Stoddard's letter and requested that Block Island pay Rogers

$72 per day in maintenance and cure. Alberto cited the following as Rogers' monthly expenses: $1,600 for rent, $119.25 for gas, $61.28 for electricity, and $362.50 for food, based on the U.S. Department of Agriculture's Moderate Cost Plan for a person of Rogers' age living in a four-person family home.

Upon Stoddard's objection that Alberto had provided only "cash receipts" with "nothing on them to identify them as a rent payment," Alberto mailed Stoddard a copy of the Bristol lease on March 27, 2014. (Rogers had vacated the Bristol home in November 2013.) This lease indicated that the monthly $1,600 rent included utilities. When Stoddard discovered that Rogers had moved to the Fall River apartment, and he further objected to the $72 daily rate demanded by Alberto, Alberto responded that "he had provided 'all of Mr. Rogers['] living expenses and all of his medical records'" and warned that he would pursue punitive damages on Rogers' behalf if Block Island did not begin making the requested maintenance and cure payments. At some point during this exchange, Alberto also provided Stoddard with two utility invoices that reflected two different addresses in Fall River.

In late June, Block Island paid $68,891.41 in cure to Rogers' health care providers. Then, on July 23, 2014, Block Island sent Rogers a maintenance check for $10,800.06 -- based on a daily rate of $63.26 -- covering the period from October 2013 to April 23, 2014, "the date of his last treatment record received."

- 8 -

The $63.26 rate was calculated based on Rogers' $1,600 monthly rent for his Bristol home and $279.80 per month in food. As the Bristol lease reflected that utilities were included, Block Island did not account for electricity and gas bills in calculating the maintenance and cure rate.

On July 25, 2014, Alberto sent Stoddard a copy of Rogers' Fall River lease, which reflected a monthly rent of $625 excluding utilities. (Rogers had vacated this apartment in March 2014.) After another threat from Alberto that he would seek punitive damages if Block Island did not provide additional maintenance of $72 per day, Block Island sent Rogers a second check for $11,956.14, based on a daily rate of $63.26.

## II.

On November 25, 2014, Block Island filed a complaint against Rogers in the U.S. District Court for the District of Massachusetts. Block Island sought a declaratory judgment on the amount of retroactive maintenance owed to Rogers (Count I), on whether it had any continuing obligation to pay maintenance and cure, and on whether it was entitled to reimbursement for overpayments resulting from Rogers' failure to provide accurate and timely information about his living expenses and medical treatment (Count II). On March 6, 2015, Rogers filed a counterclaim alleging negligence under the Jones Act, 46 U.S.C. § 30104 (Count I), unseaworthiness (Count II), continuing

maintenance and cure (Count III), negligent or intentional failure to provide maintenance and cure (Count IV), and lost wages (Count V).

Block Island moved for summary judgment on its counts for declaratory judgment, and on Counts III and IV of Rogers' counterclaim. Block Island also sought $13,027.80, the amount by which it had allegedly overpaid Rogers.

The district court granted in part and denied in part Block Island's motion. First, as to its demand for reimbursement for its overpayment, the district court agreed with Block Island's premise that it had overpaid Rogers because his actual expenses were lower than what Block Island believed them to be: "The undisputed evidence is that Rogers vacated the Bristol apartment [with $1,600 monthly rent] in November of 2013, and that his monthly rent since leaving Bristol has not exceeded $800. It is also undisputed that in calculating the daily maintenance due[,] Block Island relied on the $1,600 monthly rent figure and that an overpayment resulted." Nonetheless, the court relied on the Fifth Circuit's opinion in Boudreaux to rule that, despite the overpayment, Block Island could not seek affirmative recovery of maintenance and cure payments that it had already made. See 721 F.3d at 726-28. But the court did allow Block Island to offset the sum of overpayment, to be determined by a jury, against any damages award that Rogers might win at trial.

- 10 -

The district court then denied Block Island's summary judgment motion as to Count IV of Rogers' counterclaim, which alleged that "Block Island negligently or intentionally failed to promptly provide maintenance and cure prior to November 3, 2014." "[A]s with most issues of negligence," the court explained, "the issue of the provision of prompt and proper maintenance and cure is a matter for the jury."

With regard to Block Island's summary judgment request for declaratory relief "establishing a specific date upon which its maintenance and cure obligations to Rogers came to an end," the district court rejected Block Island's proposed date of July 31, 2014 but sua sponte supplied its own date of November 18, 2014 to ultimately grant summary judgment in Block Island's favor. The court noted that "[o]n this issue, the relevant question before the court is not whether Rogers returned to work as a fisherman (which could be explained by necessity as well as by cure)." Accordingly, although Rogers had been working on the KELLY ANN in July 2014, that fact was not dispositive of whether Rogers had reached the point of maximum medical recovery, as Block Island had argued.

The district court then turned to November 18, 2014 -- the date on which Dr. Campos had found that Rogers' health had so improved that he required no more follow-up visits -- as the date on which Rogers had reached maximum medical recovery and thus was

no longer entitled to maintenance and cure.  The court observed that while Rogers protested that he continued to have trouble breathing and to experience pain at the site of his injury, Rogers "offer[ed] no medical evidence that contradict[ed] his own doctor's evaluation that he had achieved the maximum feasible recovery as of November 18, 2014."  On that basis, the court granted Block Island's summary judgment motion as to Count III (continuing maintenance and cure) of Rogers' counterclaims.

The court lastly denied Block Island's request for attorney's fees.

Rogers' interlocutory appeal, permissible in admiralty cases under 28 U.S.C. § 1292(a)(3) and our circuit's case law, followed.  See Doyle v. Huntress, Inc., 419 F.3d 3, 6-7 (1st Cir. 2005); P.R. Ports Auth. v. Barge Katy-B, 427 F.3d 93, 100-01 (1st Cir. 2005); Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified Vessel, 833 F.2d 1059, 1063-64 (1st Cir. 1987).

III.

We review de novo the entry of summary judgment.  Hannon v. Beard, 645 F.3d 45, 47 (1st Cir. 2011).

A.  District Court's Duty to Give Notice Before Entering Summary
    Judgment on Grounds Not Stated in the Motion

Rogers' primary argument on appeal is that the district court erroneously entered summary judgment on a ground that Block Island had "never briefed, argued, or raised," thus depriving

- 12 -

Rogers of due notice or opportunity to contest that ground.  We agree.

Under Federal Rule of Civil Procedure 56(f), a district court may grant a summary judgment motion on grounds not raised by the moving party, but may do so only "[a]fter giving notice and a reasonable time to respond" to the opposing party.  Fed. R. Civ. P. 56(f).  Our circuit has established two criteria that a district court must meet before entering summary judgment sua sponte: First, "discovery [must be] sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts." Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996) (citations omitted).  Rogers does not claim that he did not have a reasonable opportunity for discovery.

Second, the district court must "first give[] the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense."  Id. "Notice, in this context, has two aspects: the summary judgment target is entitled to know both the grounds that the district court will consider and the point at which her obligation to bring forth evidence supporting the elements of her claim accrues."  Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999) (citing Berkovitz, 89 F.3d at 31).

Here, Block Island sought summary judgment explicitly and only on the ground that its maintenance and cure obligations

- 13 -

terminated on July 31, 2014 because Rogers had resumed his job as a commercial fisherman by that point.  According to Block Island, Rogers' return to work signaled that it need not make further payments because "[m]aintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery."  Vaughn v. Atkinson, 369 U.S. 527, 531 (1962).

While the district court rejected the July 31, 2014 date and the return-to-work theory, it independently, and without notice to Rogers, determined that November 18, 2014 should be the date on which Block Island's maintenance and cure obligations ended, based on a theory of maximum medical recovery.  November 18 is the date on which Dr. Campos advised that Rogers no longer required follow-up care from him.

As a threshold matter, the district court correctly noted the well-established law that a fishing vessel must continue to make maintenance and cure payments until the point of maximum medical recovery -- that is, the point at which an injured seaman's "condition has stabilized and further progress ended short of a full recovery."  Whitman v. Miles, 387 F.3d 68, 72 (1st Cir. 2004) (quoting In re RJF Int'l Corp. for Exoneration from or Limitation of Liab., 354 F.3d 104, 106 (1st Cir. 2004)).  As a matter of

- 14 -

summary judgment law, we hold that the district court nonetheless erred when it substituted a new date and ground for summary judgment without first notifying Rogers and giving him an opportunity to dispute this new date and ground.

The court's decision to grant summary judgment based on the November 18 date, notwithstanding the fact that Block Island's summary judgment motion had focused exclusively on July 31, deprived Rogers of the opportunity to argue and present evidence that he had not yet reached maximum medical recovery as of November 18. Indeed, Rogers suffered prejudice as a result of the district court's failure to provide notice of the ground on which it would enter summary judgment. Had he known that maximum medical recovery would be an issue at summary judgment, Rogers says that he would have submitted additional evidence (already in his possession) of further treatment with Dr. Cardoza, his primary care physician, after November 18. In light of the lack of notice afforded to Rogers, the district court acted prematurely when it concluded that Rogers had "offer[ed] no medical evidence that contradict[ed] [Dr. Campos's] evaluation that he had achieved the maximum feasible recovery as of November 18, 2014."

Although Block Island concedes that it briefed only the July 31, 2014 date and return-to-work theory, it argues that the district court committed no error in entering summary judgment based on the November 18 date because Rogers had been "fully aware"

that maximum medical recovery would be a central issue throughout this case. Block Island contends that Rogers had "a reasonable opportunity to glean the material facts" on that issue during discovery. But this argument misses the point. Rogers had no reason to know that he would face the issue at summary judgment. The district court has a duty to notify the nonmoving party of the stage in the litigation at which his "obligation to bring forth evidence supporting the elements of [his] claim accrues." Rogan, 175 F.3d at 79. That Rogers knew he would need to dispute that he had reached maximum medical recovery at trial, is not the same as knowing that the issue would be decided at summary judgment.[1]

B. Calculating the Amount of Maintenance and Cure Payments

Rogers also complains that the district court erred when it allegedly ruled that the amount of Rogers' maintenance and cure recovery is capped at the actual living expenses that he incurred.[2]

---

[1]    In vacating the district court's decision on the end date of Block Island's maintenance and cure obligations, we note that we need not and do not reach the question of whether a lack of notice before a summary judgment ruling could ever be per se sufficient for a vacatur absent a further showing of prejudice. Here, there is sufficient evidence in the record to demonstrate that Rogers was prejudiced by the district court's premature summary judgment ruling on the end-date issue. The end date of the obligation to pay maintenance and cure, in turn, affects the issue of the total amount of maintenance and cure owed, and that, in turn, affects the issue of whether there has been an overpayment.

[2]    Rogers' argument that the district court imposed such a cap presumably comes from two places in the summary judgment opinion. First, while recounting the governing law applicable to the dispute, the district court cited Johnson v. United States, 333

- 16 -

We understand differently the district court's statements on the law governing the calculation of maintenance and cure.

We do not read the district court's statements on this point as a ruling that limited, as a matter of law, Rogers' maintenance and cure recovery to his actual living expenses. First, the district court stated that an overpayment had resulted in the specific context of determining "whether the court can -- or should -- do anything about the maintenance overpayment in a restitutionary sense."  That is, recognition of the overpayment immediately preceded the court's ruling that Block Island could not affirmatively seek to recover any amount of overpayment but rather could only offset it against any damages that Rogers might win at trial.

Second, our reading is bolstered by the fact that, in the same summary judgment opinion, the district court refused to decide whether Block Island had unduly delayed making maintenance and cure payments to Rogers, an issue that is material to establish whether Block Island's negligence contributed to Rogers' move from

U.S. 46, 50 (1948), and noted that a seaman is "entitled to recover maintenance only for his actual living expenses."  Then, the district court listed the following three propositions as "undisputed" for the purposes of the summary judgment motion: (1) that Rogers vacated the Bristol apartment with $1,600 monthly rent in November 2013; (2) that Rogers' rent since leaving Bristol has not exceeded $800 per month; and (3) "that in calculating the daily maintenance due[,] Block Island relied on the $1,600 monthly rent figure and that an overpayment resulted."

- 17 -

the Bristol home to a series of less expensive residences. The court reserved this issue for the jury, noting that "as with most issues of negligence, the issue of the provision of prompt and proper maintenance and cure is a matter for the jury." By assigning the decision to the jury, the court left open the possibility that the jury might find that Block Island did negligently delay in paying Rogers. This finding might, in turn, impact the amount of maintenance and cure to which Rogers is entitled.

In this circuit, as in numerous sister circuits, the norm is to award an injured seaman maintenance and cure payments in the amount of his actual living expenses. See, e.g., Johnson, 333 U.S. at 50 (affirming circuit court's decision to reject injured seaman's claim for maintenance and cure because "there [wa]s ample evidence . . . that petitioner had incurred no expense or liability for his care and support at the home of his parents"); Hall v. Noble Drilling (U.S.) Inc., 242 F.3d 582, 587 (5th Cir. 2001) ("A seaman is entitled to the reasonable cost of food and lodging, provided he has incurred the expense." (emphasis added)); Barnes v. Andover Co., L.P., 900 F.2d 630, 641 (3d Cir. 1990) ("Because maintenance is intended to substitute for the food and lodging that a seaman enjoyed at sea, it is established that the seaman is entitled only to expenses actually incurred. Thus, if a seaman is not charged for hospitalization or lives with his

family without incurring any expense or liability for his care, no maintenance is due." (citations omitted)).

But the rule remains that an injured seaman may recover reasonable expenses beyond the amount that he actually incurred, even if it is the exceptional case where the seaman's reasonable expenses will exceed his actual expenses. See, e.g., McMillan v. Tug Jane A. Bouchard, 885 F. Supp. 452, 463-67 & n.13 (E.D.N.Y. 1995) (holding that injured seaman was entitled to maintenance and cure payments even though he had paid no rent, after factfinding at trial that the seaman had involuntarily moved in with friends and family because his employer had refused to pay him maintenance), abrogated on other grounds by Hicks v. Tug PATRIOT, 783 F.3d 939 (2d Cir. 2015); cf. Vaughan v. Atkinson, 369 U.S. 527, 530-31, 533 (1962) (holding that injured seaman was entitled to attorney's fees and to his wages earned as taxi driver without offset, after factfinding that his employer had negligently remained "silen[t,] neither admitting nor denying" its duty to pay maintenance and cure for two years). Rogers argues that this case presents just this kind of exceptional circumstance because Block Island's delayed maintenance and cure payments forced him to vacate the Bristol home and seek cheaper housing. That fact-bound determination, however, is one for the jury. To the extent that the district court could be understood as having ruled otherwise, any such ruling would be error.

C.  Method of Recovery for Any Overpayment

Finally, both parties seek affirmance of the district court's decision that although Block Island cannot affirmatively sue to recover any maintenance and cure payments that it has already made to Rogers, it can offset any overpayment (the exact amount of which should be determined at trial) against any damages that Rogers may win.

The district court properly relied on Boudreaux v. Transocean Deepwater, Inc., 721 F.3d 723 (5th Cir. 2013).  There, the Fifth Circuit faced a similar question -- namely, whether a Jones Act employer, upon establishing that it overpaid an injured seaman, is "automatically entitled to a judgment against the seaman for benefits already paid."  Id. at 725.  The court answered this question in the negative, observing that allowing for such affirmative recovery would disturb a central policy of admiralty law, which seeks to "achieve[] a fair reconciliation between protecting seamen in the wake of debilitating on-the-job injury and ensuring that shipowners can protect themselves from liability for sums attributable to concealed preexisting injuries."  Id. at 728.  By denying the availability of affirmative recoveries but allowing for offset against the injured seaman's damages award, the court in Boudreaux strove to strike the proper balance.  We agree with Boudreaux's sound rule, as well as the rationale animating it.

We thereby adopt the Fifth Circuit's approach in Boudreaux that "once a shipowner pays maintenance and cure to the injured seaman, the payments can be recovered only by offset against the seaman's damages award -- not by an independent suit seeking affirmative recovery." Id. at 728.

## IV.

We affirm the district court's ruling that Block Island may offset any overpayment that occurred against any damages that Rogers may win at trial.

We vacate the ruling that Block Island's maintenance and cure obligations terminated on November 18, 2014, and remand for further proceedings not inconsistent with this opinion. The district court did not provide Rogers with sufficient notice and opportunity to contend otherwise before entering summary judgment. No costs are awarded.